# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF NICHOLAS LAMOTTE FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 26-MC _____ |

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

    A.    The Parties ..............................................................................................3

    B.    The Prenuptial Agreement and Petitioner's Marriage to Ms. Economides ............4

    C.    The Greek Proceedings .........................................................................8

        1.    The Declaratory Action..................................................................8

        2.    The Divorce Proceedings .............................................................8

        3.    The Custody Proceedings ............................................................9

    D.    Respondents Possess Highly Material Information For Use In The Greek Proceedings .......................................................................................11

ARGUMENT ......................................................................................................12

I.    PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782..........................................................................................................13

    A.    Respondents "Reside" or are "Found" In The District .............................14

    B.    The Discovery Sought Is For Use In Greek Proceedings. ....................................15

    C.    Petitioner Is An "Interested Person" In The Greek Proceedings ..........................17

II.    ALL DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING PETITIONER'S APPLICATION..................................................................17

    A.    The First *Intel* Factor Favors Granting Discovery Because Respondents Are Not Parties to the Greek Proceedings. ...........................................18

    B.    The Second *Intel* Factor Favors Granting Discovery Because the Greek Courts Will Be Receptive to the Requested Discovery ........................................18

    C.    The Third *Intel* Factor Favors Granting Discovery Because The 1782 Application Does Not Circumvent Any Foreign Proof-Gathering Restrictions Or Other Policies ...............................................................19

    D.    The Fourth *Intel* Factor Favors Granting Discovery Because The Requests Are Narrowly Tailored and Proportional To The Needs Of The Greek Proceedings ...........................................................................................20

ii

III.      THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE* ...........21

CONCLUSION ....................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)...................................................................16

*In re Application for an Order Permitting Metallgesellschaft AG to take
Discovery*,
121 F.3d 77 (2d Cir. 1997)....................................................................13

*In re Application of OOO Promnesftstroy*,
No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) ...........................18

*In re Aso*,
No. 19 MC 190 (JGK) (JLC), 2019 WL 2345443 (S.D.N.Y. June 3, 2019) ..........................15

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
No. 17-MC-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) ..............................14

*In re Bank J. Sarasin AG*,
No. 25-MC-00369 (MMG), 2025 WL 3171876 (S.D.N.Y. Nov. 13, 2025) ..........................18

*In re Bayer AG*,
146 F. 3d 188 (3d Cir. 1998)....................................................................21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012).......................................................13, 15, 20

*In re Chevron Corp.*,
No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010)................................................22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).................................................................14

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) ...................................................14

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)....................................................13

*In re Ernesto Andrade Grp.*,
712 F. Supp. 3d 438 (S.D.N.Y. 2024)................................................21

*Euromepa S.A. v. R. Esmerian*, Inc.,
51 F.3d 1095 (2d Cir. 1995)......................................................13, 19

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
    27 F.4th 136 (2d Cir. 2022) ......................................................................15

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ..............................................................15

*In re Gushlak*,
    No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) ....................................22

*In re Hansainvest Hanseatische Inv.-GmbH*,
    364 F. Supp. 3d 243 (S.D.N.Y. 2018) ........................................................17

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ....................................................................................14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ......................................................................... *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ......................................................................17

*In re Kuwait Ports Auth.*,
    No. 20-MC-46, 2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ................................17

*In re Lane*,
    No. 22 MISC. 34 (LGS), 2022 WL 16737132 (S.D.N.Y. Nov. 7, 2022) ................14

*Marubeni Am. Corp. v. LBA Y.K.*,
    335 Fed. App'x 95 (2d Cir. June 17, 2009) ..............................................17

*Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*,
    No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ......................................14

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)........................................................................3, 16

*In re Metallgesellschaft AG*,
    121 F.3d at 79 ............................................................................................20

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    No. 1:08-cv-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)............................21

*Mirimskaya v. Smirnov*,
    No. 16 C 2761, 2016 WL 11953244 (N.D. Ill. June 14, 2016) ............................15

*In re Orthogen Int'l GmbH*,
    No. 23-MC-152 (VSB), 2025 WL 1265878 (S.D.N.Y. Apr. 30, 2025) ................17

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019) ..................................................................15

*In re Piraeus Bank*,
    No. 20-MC-210 (RA), 2020 WL 2521322 (S.D.N.Y. May 18, 2020) ....................14

*In re Porsche Automobil Holding SE*,
    No. 1:15-mc-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ..........................13, 22

*In re Safra*,
    21-MC-640 (GHW) (JLC), 2022 WL 3584541 (S.D.N.Y. Aug. 2, 2022) ............19

*Sampedro v. Silver Point Cap., L.P.*,
    818 F. App'x 14 (2d Cir. 2020), *as amended* (June 5, 2020) ................................16

*Schmitz v. Bernstein Liebard & Lifshitz, LLP.*,
    376 F.3d 79 (2d Cir. 2004)..................................................................................19

*In re Tethyan Copper Co. Pty. Ltd.*,
    No. 21 MISC. 377 (AT), 2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022)................21

## Statutes

28 U.S.C. § 1782.................................................................................................... *passim*

Petitioner Nicholas Lamotte ("Petitioner") respectfully submits this Memorandum of Law in support of his *Ex Parte* Application and Petition pursuant to 28 U.S.C. § 1782 ("1782 Application")[1] for an order authorizing him to obtain limited discovery from JPMorgan Chase & Co. ("JPMorgan") and Morgan Stanley ("Morgan Stanley" and, together with JPMorgan, the "Respondents") for use in judicial proceedings pending and contemplated in Greece in the form of the attached subpoenas *duces tecum* (the "Subpoenas").[2]

## PRELIMINARY STATEMENT

This Application arises from pending and contemplated matrimonial and custody proceedings in Greece, in which Petitioner alleges that his spouse, Ms. Economides, failed to disclose significant financial information or provided incomplete or misleading information when disclosure was required (a) during the parties' prenuptial negotiations and, subsequently, (b) before the Greek courts overseeing their disputes. Based on information shared by Ms. Economides with Petitioner during their marriage and other documentation, but details of which she refuses to voluntarily share with Petitioner now, that financial information includes assets and investments in accounts with JPMorgan and Morgan Stanley in New York. Petitioner brings this application under Section 1782 to obtain targeted information from those banks for use in the aforementioned Greek proceedings.

Petitioner and Ms. Economides married in 2021, after executing a prenuptial agreement on December 7, 2020 (the "Prenuptial Agreement") which was concluded on the basis of financial

---

[1]  As further explained below, Section III, Section 1782 applications are routinely made and decided on an *ex parte* basis.

[2]  The Subpoenas are attached as Exhibits B and C to the Declaration of Lucas Bento, dated February 13, 2026 ("Bento Decl.").

representations made by the parties at the time it was executed. The parties separated in April 2025 and have both subsequently filed proceedings in foreign courts seeking a divorce and custody of their son, with Ms. Economides seeking permanent sole custody of their son and Petitioner seeking joint and equal custody of their son.

Specifically, both Ms. Economides and Petitioner have filed a divorce proceeding before the Athens Court of First Instance (the "<u>Divorce Proceedings</u>"), both Petitioner and Ms. Economides have filed interim measures and custody proceedings before the Athens Court of First Instance (the "<u>Custody Proceedings</u>"), and Petitioner has started to prepare to commence a new proceeding (a "<u>Declaratory Action</u>") before the Athens Court of First Instance to enforce the Prenuptial Agreement (together, the "<u>Greek Proceedings</u>").  Considering Ms. Economides has told Petitioner she has accounts and investments with Respondents, Respondents are highly likely to possess information and records about Ms. Economides' assets, which would be relevant to Petitioner's contention that Ms. Economides did not provide full and accurate disclosure of her assets, or assets of which she might be a beneficiary, prior to the Prenuptial Agreement and would otherwise be relevant to Ms. Economides' credibility, which are critical issues in the Greek Proceedings.

The Court should grant this 1782 Application because it meets all the requirements of Section 1782.  Petitioner is a party to the Greek Proceedings and Respondents "reside or are found" in the Southern District of New York because they are headquartered here.  The discovery sought by Petitioner is highly material and relevant to the issues at stake in the Greek Proceedings, at least insofar as the requested discovery will: (i) aid in assessing the validity and effect of the parties' Prenuptial Agreement; (ii) inform financial claims arising from the divorce, including

maintenance; and (iii) aid in evaluating Ms. Economides' credibility in proceedings where her honesty is directly at issue.[3]  The discovery sought is therefore for use in the Greek Proceedings.

Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) decision heavily favors authorizing the discovery sought by Petitioner:  (i) Respondents are not parties to the Greek Proceedings, and Petitioner is otherwise unable to obtain the discovery from these entities; (ii) the Greek courts will be receptive to the discovery that Petitioner seeks; (iii) the Application does not circumvent foreign proof-gathering restrictions and is made in good faith; and (iv) the discovery sought is neither unduly intrusive nor burdensome. In addition, granting this 1782 Application would further the "twin aims" of § 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."[4]  Accordingly, Petitioner respectfully requests that the Court grant Petitioner's 1782 Application and permit Petitioner to serve the Subpoenas on Respondents.

## FACTUAL BACKGROUND

### A.    The Parties

*Nicholas Lamotte.*  Petitioner is a successful businessman who comes from a wealthy family.  As discussed below, Petitioner is named as the defendant in the Divorce Proceedings and Custody Proceedings initiated by Ms. Economides and is the plaintiff in his own corresponding counter Divorce Proceedings and Custody Proceedings. Petitioner will also be the plaintiff in the Declaratory Action.

---

[3]  Declaration of Elias Yiannatsis ("Yiannatsis Decl.") ¶ 42.

[4]  *Mees v. Buiter*, 793 F.3d 291, 297–98 (2d Cir. 2015).

*Helen Economides.*    Ms. Economides is the wife of Petitioner.  She comes from a family with significant financial resources—her family sold its business in May 2003 to Philip Morris for €368 million—and receives an annual income from her mother as well as use of her mother's credit card.[5]  As discussed below, she is the defendant in the counter Divorce Proceedings and Custody Proceedings initiated by Petitioner and is the plaintiff in her own Divorce Proceedings and Custody Proceedings.  She is also the defendant in the Declaratory Action.

*JPMorgan Chase & Co.*  JPMorgan is a bank headquartered at 270 Park Avenue New York, NY 10017.[6]

*Morgan Stanley.*  Morgan Stanley is a bank headquartered at 1585 Broadway New York, NY 10036.[7]

   **B.**    **The Prenuptial Agreement and Petitioner's Marriage to Ms. Economides**

On March 19, 2021, Petitioner married Ms. Economides (the "Marriage").[8] The parties separated in April 2025.[9]

Prior to the Marriage, on December 7, 2020, Petitioner and Ms. Economides executed a Prenuptial Agreement made in contemplation of and conditional upon the Marriage, the terms of which are confidential.[10]

---

[5]  Yiannatsis Decl. ¶ 13.

[6]  Bento Decl. ¶¶ 6-7, Ex. D-E.

[7]  Bento Decl. ¶¶ 8-9, Exs. F-G.

[8]  Yiannatsis Decl. ¶ 11.

[9]  Yiannatsis Decl. ¶ 11.

[10]  Yiannatsis Decl. ¶ 12 n.2.

The Prenuptial Agreement was negotiated, agreed and executed on the basis of financial representations made by both parties.[11]  Accordingly, the Parties exchanged financial disclosure for the purposes of preparing their Prenuptial Agreement.[12]

Petitioner has reason to believe Ms. Economides intentionally failed to provide full and accurate disclosure of her assets, or assets of which she might be a beneficiary, in connection with the execution of the Prenuptial Agreement.  Specifically, Petitioner has reason to believe that Ms. Economides has accounts at and/or investments with JPMorgan and Morgan Stanley (among other U.S.-based financial institutions, which will be subject to separate applications pursuant to 28 U.S.C. § 1782) which she did not disclose in the Prenuptial Agreement disclosure.

As detailed in Mr. Yiannatsis' declaration, Petitioner has evidence that Ms. Economides has or had accounts at JPMorgan and Morgan Stanley, and has communicated with both banks, including in New York.  For example, Ms. Economides has told Petitioner about numerous meetings she has had with JPMorgan and Morgan Stanley, including:

- On October 18, 2018, in response to Petitioner asking if Joseph J. Prorok, an executive director at the New York office of JPMorgan,[13] was Ms. Economides' 'JPM guy', she responded 'Yes!!!'.[14]  Petitioner understands that, in order to be able to bank with the Global Families Group of JPMorgan Private Bank in New York (formerly known as the Multinational Group), where Mr. Prorok worked at

---

[11]  Yiannatsis Decl. ¶ 12.

[12]  Yiannatsis Decl. ¶ 12.

[13]  Yiannatsis Decl. ¶ 15 (citing Ex. 7).

[14]  Yiannatsis Decl. ¶ 15 (citing Ex. 8).

the time - an individual and/or family must have a net worth in excess of approximately $100 million.

- On October 26, 2018: Ms. Economides told Petitioner that 'the person at Morgan stanley is much better at explaining'.[15]

- On November 9, 2018: when Petitioner suggested that Ms. Economides should open a private bank account, she responded via text, 'but i have one like that at morgan stanley'.[16]

- On November 9, 2018: Ms. Economides refers to her mother having an account with JPMorgan, but that 'i think she has me in there somewhere'.[17]

- On November 9, 2018: Ms. Economides told Petitioner, 'Im much closer with the morgan stanley one and i love the ubs one'.[18]

- On January 18, 2019: Ms. Economides informs Petitioner that her mother 'had her meeting with Morgan Stanley yesterday' but that she herself did not attend 'cause of orientation' (for her Master's degree at Columbia University in New York) and that she would meet him 'when I'm here'.[19]  This exchange occurred while Ms. Economides was in New York.[20]

---

[15]  Yiannatsis Decl. ¶ 15 (citing Ex. 9).

[16]  Yiannatsis Decl. ¶ 15 (citing Ex. 10).

[17]  Yiannatsis Decl. ¶ 15 (citing Ex. 11).

[18]  Yiannatsis Decl. ¶ 15 (citing Ex. 12).

[19]  Yiannatsis Decl. ¶ 15 (citing Ex. 13).

[20]   Yiannatsis Decl. ¶ 15. Between January 2019 and May 2020, Ms. Economides was enrolled as a student at Columbia University, where she spent an academic year studying for a Master's degree in Non-Profit Management. *Id.*

- On April 1, 2019: Ms. Economides told Petitioner that she spoke to her mother, and that 'she will give me the funds from a bank account left for me by my grandmother!! So it's not her!'.[21]

- On November 25, 2019: Ms. Economides provided details for a Bank of America account.[22]

- On February 15, 2021: Ms. Economides explained to Petitioner that her mother is 'taxed for our common money in alpha [a Greek bank] the account is considered hers… not mine even though it's mine..'.[23]

- On June 4, 2023: Ms. Economides sent Petitioner a JPMorgan educational guide, 'Teaching your children about wealth'. [24]

Furthermore, during the Marriage, Ms. Economides told Petitioner that the funds received from the sale of her family's business to Philip Morris were in part invested with banks in New York, and that she is a client of these banks.[25]  Moreover, Ms. Economides downloaded documents from another U.S. bank in which she has an account to Petitioner's iPad.[26]  Ms. Economides also signed additional documents on Petitioner's iPad, telling him they were related to her investment portfolios and bank accounts in the United States.  She subsequently deleted those documents from Petitioner's iPad.[27]

---

[21]  Yiannatsis Decl. ¶ 15 (citing Ex. 14).

[22]  Yiannatsis Decl. ¶ 15 (citing Ex. 15).

[23]  Yiannatsis Decl. ¶ 15 (citing Ex. 16).

[24]  Yiannatsis Decl. ¶ 15 (citing Ex. 17).

[25]  Yiannatsis Decl. ¶ 13.

[26]  Yiannatsis Decl. ¶ 16.

[27]  Yiannatsis Decl. ¶ 17.

### C.    The Greek Proceedings

This 1782 Application seeks discovery for use in the Greek Proceedings, which comprise a  contemplated Declaratory Action, the pending Divorce Proceedings and the ongoing Custody Proceedings.

#### 1.    *The Declaratory Action*

The Declaratory Action is a contemplated civil action which Petitioner is preparing to file to seek a judicial declaration pursuant to Article 70 of the Greek Code of Civil Procedure that the Parties' Prenuptial Agreement is valid and should be upheld within the Greek legal order.[28]  The Declaratory Action is within reasonable contemplation, as Petitioner has retained Greek counsel, and Petitioner's Greek counsel has articulated a viable legal theory and taken steps to prepare a complaint for filing.[29]

Petitioner has a legitimate and present legal interest in seeking a declaratory judgment confirming the validity and legal effect of the Prenuptial Agreement in order to secure legal certainty as to the governing property regime agreed between the parties and to ensure that the agreement is recognised and given effect by the Greek courts, where the parties' matrimonial proceedings are pending.[30]

#### 2.    *The Divorce Proceedings*

The Divorce Proceedings stem from Ms. Economides filing an application for divorce before the Greek Court on October 27, 2025, asking for the Marriage of the parties to be

---

[28]  Yiannatsis Decl. ¶¶ 21-27.

[29]  Yiannatsis Decl. ¶¶ 21-27.

[30]  Yiannatsis Decl. ¶ 23.

dissolved.[31]    Petitioner filed a counter divorce lawsuit on January 16, 2026.[32]    Both Ms.

Economides' divorce lawsuit and Petitioner's counter lawsuit are due to be heard on March 2,

2026 before the Athens Court of First Instance.[33]

As a consequence of the Divorce Proceedings, Petitioner and Ms. Economides will

subsequently engage in financial proceedings where financial provisions will be made.[34]

Petitioner will argue, *inter alia*, that the parties' Prenuptial Agreement should be upheld by the

Greek courts or, in the alternative, that any financial provision made to Ms. Economides in

connection with the divorce must be adjusted to take into account the true nature of her assets, or

assets of which she might be a beneficiary.[35]    The requested disclosure is therefore also

independently valuable in the unlikely event that the Greek court does not fully uphold the

Prenuptial Agreement.[36]

### 3.    The Custody Proceedings

The Custody Proceedings are ongoing proceedings before the Greek Court concerning

custody of the parties' son.[37]    Ms. Economides seeks sole custody of the Parties' son whereas

---

[31]  Yiannatsis Decl. ¶ 28. On October 17, 2025, Petitioner filed an application for divorce in England and Wales.  *Id.* Ms. Economides contested the jurisdiction of the courts of England and Wales for the Divorce Proceedings. *Id.* After careful consideration, Petitioner has consented to the Greek courts exercising jurisdiction over the parties' divorce, without prejudice to ancillary proceedings being pursued in other jurisdictions, as he hoped that agreeing to Ms. Economides' preferred jurisdiction would facilitate meaningful settlement discussions. Petitioner also concluded that if his efforts to settle matters out of court were unsuccessful, it would be in his son's best interests to have one jurisdiction expeditiously determine all substantive matters relating to custody and divorce.  *Id.*

[32]  Yiannatsis Decl. ¶ 28.

[33]  Yiannatsis Decl. ¶ 28.

[34]  Yiannatsis Decl. ¶ 30.

[35]  Yiannatsis Decl. ¶ 30.

[36]  Yiannatsis Decl. ¶ 30.

[37]  Yiannatsis Decl. ¶ 19.

Petitioner seeks joint and equal custody.[38]  Child arrangements proceedings have also previously been pursued by Petitioner, seeking to enforce the agreement that the parties had signed, in another jurisdiction.[39]

In custody proceedings, Greek courts determine the child's best interests by reference to the specific circumstances of the child, including the child's age, health, personal characteristics, relationships with each parent and siblings, and the overall living conditions each parent can provide.[40]  This assessment expressly includes consideration of each parent's financial situation, as part of a holistic evaluation of the child's welfare.[41]  Greek courts consider a party's character, credibility and honesty when determining custody arrangements.[42]  Greek courts therefore routinely assess whether a litigant has acted honestly and transparently, particularly where that party seeks sole custody or primary decision-making authority, as Ms. Economides is seeking.[43]  This assessment extends to representations made about financial circumstances where, as is the case here, such representations are relied upon to support applications concerning custody, relocation, or the child's best interests.[44]  Evidence that Ms. Economides failed to disclose significant financial assets or provided incomplete or misleading information when disclosure was required, would be directly relevant to the court's assessment of her credibility.[45]  This is not a

---

[38]  Yiannatsis Decl. ¶ 34.

[39]  Yiannatsis Decl. ¶ 34.  Petitioner previously initiated similar proceedings in the courts of England and Wales.

[40]  Yiannatsis Decl. ¶ 35.

[41]  Yiannatsis Decl. ¶ 35.

[42]  Yiannatsis Decl. ¶ 36.

[43]  Yiannatsis Decl. ¶ 37.

[44]  Yiannatsis Decl. ¶ 37.

[45]  Yiannatsis Decl. ¶ 37.

collateral issue: credibility informs the court's assessment of parental judgment, reliability, and willingness to act in the child's best interests.[46]  Therefore, evidence bearing on Ms. Economides' honesty and candor in important financial matters is highly relevant to the Custody Proceedings as it reflects directly on her credibility.[47]  The disclosure requested will also bear directly on issues raised in the Custody Proceedings concerning the appropriate place of residence for Ms. Economides and the parties' child.[48]

The Custody Proceedings are relevant to this 1782 Application at least insofar as the disclosure sought bears upon Ms. Economides' honesty and candor in important financial matters which in turn bears directly on her credibility; however, Petitioner's highest priority is protecting his son's privacy and welfare.[49]  Accordingly, Petitioner believes further details relating to the Custody Proceedings should remain private and confidential.  He is prepared to disclose any further information required by the Court on a confidential and *in camera* basis.

### D.    Respondents Possess Highly Material Information For Use In The Greek Proceedings

The information Petitioner requests in this 1782 Application from Respondents will assist Petitioner's arguments in the Greek Proceedings by providing, *inter alia*, further evidence to support Petitioner's allegation that Ms. Economides intentionally failed to disclose her assets, or assets of which she might be a beneficiary, to Petitioner or provided incomplete or misleading information prior to the execution of the Prenuptial Agreement or when disclosure was required,

---

[46]  Yiannatsis Decl. ¶ 37.

[47]  Yiannatsis Decl. ¶ 37.

[48]  Yiannatsis Decl. ¶ 38.

[49]  Yiannatsis Decl. ¶ 39.

which goes to issues of her financial situation, credibility, and any financial provision to be made to her—issues that are relevant in the Greek Proceedings.[50]  Respondents are banks located in this District[51] that are likely to have information related to Petitioner's contentions in the Greek Proceedings that Ms. Economides did not fully disclose her assets, or assets of which she might be a beneficiary, in the Prenuptial Agreement and that Ms. Economides provided incomplete or misleading information in the Greek Proceedings.[52]  As noted above (see *supra*, pp. 5-8) and in Mr. Yiannatsis' Declaration, information provided or shared by Ms. Economides shows that she has accounts with those banks in New York,[53] which is information she failed to disclose as required under the parties' matrimonial arrangements and in the Greek Proceedings.

As further explained in Mr. Yiannatsis' Declaration filed in support of this 1782 Application, the information sought by Petitioner would be highly relevant to the Greek Proceedings.[54]

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding.  *Intel*, 542 U.S. at 259.  When evaluating whether Section 1782 discovery is appropriate, courts in this circuit "evaluate discovery requests . . . in light of the statute's twin aims of providing efficient

---

[50]  Yiannatsis Decl. ¶¶ 15-18, 20-40, 46-52.

[51]  Bento Decl., Exs. D-G.

[52]  Petitioner sent written correspondence to the Respondents on December 19, 2025 asking them to preserve documents.  Bento Decl. ¶¶ 11-12, Exs. I-J.  Petitioner also sent written correspondence to Ms. Economides' English counsel to inform them of his intent to file this § 1782 application.  Bento Decl. ¶ 10, Ex. H.

[53]  Yiannatsis Decl. ¶¶ 15-16.

[54]  *See* Yiannatsis Decl. ¶¶ 15-18, 20-40, 46-52; App'xs A-B (explaining how each document request is relevant for the Greek claims and proceedings).

means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See*, *e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 180-81 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . ."); *In re Porsche Automobil Holding SE,* No. 1:15-mc-417 (LAK), 2016 WL 702327, at \*2 (S.D.N.Y. Feb. 18, 2016) ("[A]s a general matter, the Supreme Court . . . ha[s] made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation.").

## I.    PETITIONER SATISFIES THE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

An application made pursuant to § 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80. For the reasons provided below, Petitioner's 1782 Application satisfies all three statutory requirements of § 1782.

### A.     Respondents "Reside" or are "Found" In The District

A party resides or "is found" in the district when a court holds personal jurisdiction over that party consistent with due process. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (under Section 1782, "'reside or is found' language extends to the limits of personal jurisdiction consistent with due process.").

Respondents JPMorgan and Morgan Stanley reside or are "found" in this district because they both have their principal place of business in this district.[55]  *See In re Piraeus Bank*, No. 20-MC-210 (RA), 2020 WL 2521322, at *2 (S.D.N.Y. May 18, 2020) (authorizing discovery from JPMorgan); *In re Lane*, No. 22 MISC. 34 (LGS), 2022 WL 16737132, at *2 (S.D.N.Y. Nov. 7, 2022) (authorizing discovery from Morgan Stanley); *Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (noting that a corporation is found in the district where it is "essentially at home"); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business.") (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)) (emphasis added).  Accordingly, this statutory factor is satisfied.

---

[55]  Bento Decl., Exs. D-E (JPMorgan in headquartered in New York City), Exs. F-G (same for Morgan Stanley).

**B.      The Discovery Sought Is For Use In Greek Proceedings.**

The Greek Proceedings qualify as proceedings in a "foreign or international tribunal" for purposes of Section 1782.  The Divorce Proceedings are pending and scheduled to be heard on March 2, 2026 before the Athens Court of First Instance and the Custody Proceedings are ongoing.[56] These ongoing proceedings and Petitioner's reasonably contemplated Declaratory Action are adjudicatory in nature.[57]  *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022) (holding § 1782 applicant must seek discovery for use in an "adjudicative" proceeding).  And courts have recognized that divorce and custody proceedings and declaratory actions before foreign courts satisfy Section 1782.  *See, e.g., Gushlak v. Gushlak*, 486 F. App'x 215, 216 (2d Cir. 2012) (affirming grant of § 1782 discovery for use in a divorce proceeding in the Cayman Islands); *In re Aso*, No. 19 MC 190 (JGK) (JLC), 2019 WL 2345443, at *1 (S.D.N.Y. June 3, 2019) (granting § 1782 application seeking discovery for use in a divorce proceeding in Japan); *Mirimskaya v. Smirnov*, No. 16 C 2761, 2016 WL 11953244, at *3 (N.D. Ill. June 14, 2016) (permitting § 1782 discovery for use in custody proceedings in Russia); *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 914 (N.D. Cal. 2019) (granting § 1782 discovery for use in German proceedings seeking declaratory relief).

Likewise, Petitioner's requested discovery is "for use" in the Greek Proceedings.  Under Second Circuit law, Petitioner is not required to show that the information sought would be discoverable or admissible in the Greek Proceedings.  *Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it

---

[56]  Yiannatsis Decl. ¶¶ 28, 34.

[57]  Yiannatsis Decl. ¶¶ 20, 57.

should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, Petitioner only needs to show that it has "the *practical ability . . .* to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017); *Mees*, 793 F.3d at 298 (the "for use" phrase simply "indicates something that will be employed with some advantage or serve some use"); *Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 17 (2d Cir. 2020), *as amended* (June 5, 2020) ("for use" requirement satisfied where application sought evidence to "prepare witnesses, craft questions, and present his case" in the foreign litigation). Petitioner plainly satisfies this requirement here. As explained above and in the declaration of Mr. Yiannatsis, the information sought in the Subpoenas is highly material and relevant to the Greek Proceedings to assist Petitioner's case.[58] The disclosure is sought for at least three specific and overlapping purposes: (i) to assess the validity and effect of the Prenuptial Agreement; (ii) to inform financial claims arising from the divorce, including maintenance; and (iii) to evaluate Ms. Economides' credibility in proceedings where her honesty is directly at issue in those proceedings.[59]

Finally, although Petitioner has not yet filed the Declaratory Action, that proceeding is reasonably contemplated and therefore satisfies § 1782. The Supreme Court has made clear a foreign proceeding need only be "within reasonable contemplation" to qualify for § 1782 relief. *Intel*, 542 U.S. at 259. Courts in this District have found the "reasonable contemplation" standard is satisfied where an applicant "retained foreign counsel, had 'begun preparing the necessary pleadings for the petition,' had 'set forth a theory' of the underlying claims, and 'provided

---

[58]  Yiannatsis Decl. ¶¶ 21-40, 46-52 & Appendices A-B.

[59]  Yiannatsis Decl. ¶ 42.

declarations expressing an intent to initiate' subsequent proceeding." *In re Orthogen Int'l GmbH*, No. 23-MC-152 (VSB), 2025 WL 1265878, at *2 (S.D.N.Y. Apr. 30, 2025) (quoting *In re Kuwait Ports Auth.*, No. 20-MC-46, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021));   *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018).  As noted above (*supra*, pp. 8) and in Mr. Yiannatsis' declaration, that is precisely what Petitioner has done here.[60] Accordingly, Petitioner's 1782 Application satisfies the "for use" requirement.

### C.    Petitioner Is An "Interested Person" In The Greek Proceedings

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings.  While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.  Petitioner is a party to the Greek Proceedings.[61]  Therefore, Petitioner is an "interested person" under Section 1782 in the Greek Proceedings.

## II.    ALL DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING PETITIONER'S APPLICATION

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application.  *See Intel*, 542 U.S. at 264-65.  The Second Circuit has held that none of the discretionary factors should be given more weight than the others, nor is one factor dispositive.  *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 97 (2d Cir. June 17, 2009).

---

[60]   Yiannatsis Decl. ¶¶ 21-27.

[61]   Yiannatsis Decl. ¶ 2.

In any event, each of the *Intel* factors weighs in favor of granting Petitioner's 1782 Application. *First*, Respondents are not parties to the Greek Proceedings. *Second*, there is no reason to believe that the Greek courts would be unreceptive to evidence obtained through Section 1782 discovery. *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, Petitioner's narrowly tailored document requests carefully circumscribe and target key facts so as to avoid undue burden on the Respondents.

### A.    The First *Intel* Factor Favors Granting Discovery Because Respondents Are Not Parties to the Greek Proceedings.

The first *Intel* factor asks "whether the entity from which discovery is sought is a participant to the foreign proceeding." *In re Bank J. Sarasin AG*, No. 25-MC-00369 (MMG), 2025 WL 3171876, at *2 (S.D.N.Y. Nov. 13, 2025). "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, Respondents are not parties to the Greek Proceedings, and there is no evidence to suggest Respondents are within the jurisdictional reach of the Greek courts.[62]

Accordingly, the first *Intel* factor weighs in favor of discovery.

### B.    The Second *Intel* Factor Favors Granting Discovery Because the Greek Courts Will Be Receptive to the Requested Discovery

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through § 1782. *See In re Application of OOO Promnesfstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel*

---

[62]    Yiannatsis Decl. ¶¶ 53-54. Further, Ms. Economides has already refused to voluntarily provide the evidence to Petitioner. *Id.* ¶¶ 41-45.

factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"). There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa*, 51 F.3d at 1102. A court should deny discovery on the basis of lack of receptiveness *only* where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added). *See In re Safra*, 21-MC-640 (GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 2, 2022) ("objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government."); *Schmitz v. Bernstein Liebard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (district court denied discovery request where German Ministry of Justice and local German prosecutor explicitly asked district court to deny it).

The Greek courts will be receptive to evidence obtained through this 1782 Application as the evidence sought here is relevant to the issues in the Greek Proceedings.[63]

Accordingly, the second *Intel* factor weighs heavily in favor of granting Petitioner's 1782 Application.

## C.    The Third *Intel* Factor Favors Granting Discovery Because The 1782 Application Does Not Circumvent Any Foreign Proof-Gathering Restrictions Or Other Policies

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

---

[63]    Yiannatsis Decl. ¶¶ 55-57.

States." *Intel*, 542 U.S. at 265. The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn*, 673 F.3d at 82 ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is there any requirement that Petitioner exhaust his remedies in the foreign court first. *See In re Metallgesellschaft AG*, 121 F.3d at 79 ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes."). Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy. Greece does not have any laws or policies restricting or prohibiting Petitioner from collecting and using the discovery sought here.[64]

Accordingly, the third *Intel* factor weighs heavily in favor of granting Petitioner's 1782 Application.

### D.     The Fourth *Intel* Factor Favors Granting Discovery Because The Requests Are Narrowly Tailored and Proportional To The Needs Of The Greek Proceedings

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation

---

[64]  Yiannatsis Decl. ¶ 58.

under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F. 3d 188, 195 (3d Cir. 1998).

Here, Petitioner's requests are narrowly tailored by covering a limited period (from July 2020 to the present date), seeking a discrete set of documents, and being directly and independently relevant to the Greek Proceedings and proportional to the issues in the Greek Proceedings. *See* Bento Decl. Exs. B & C; Yiannatsis Decl. App'xs A & B (outlining how each document request is relevant to the issues in the Greek Proceedings). Moreover, if Respondents reasonably believe that any documents present confidentiality concerns, Petitioner is willing to consider accommodating such concerns, such as by stipulating to a protective order. *See, e.g. Minatec Fin. S.A.R.L. v. SI Group Inc*., No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.")

Accordingly, the fourth *Intel* factor weighs heavily in favor of granting Petitioner's 1782 Application.

## III.   THE COURT SHOULD GRANT PETITIONER'S APPLICATION *EX PARTE*

The Court should grant Petitioner's 1782 Application *ex parte*. *Ex parte* applications under 28 U.S.C. § 1782 are routine in this district. *See e.g.*, *In re Tethyan Copper Co. Pty. Ltd.*, No. 21 MISC. 377 (AT), 2022 WL 1266314, at *1 (S.D.N.Y. Apr. 28, 2022) ("Courts routinely grant [§ 1782] petitions *ex parte*."); *In re Ernesto Andrade Grp.*, 712 F. Supp. 3d 438, 442 (S.D.N.Y. 2024) (similar). Indeed, Respondents may simply choose to comply with the court-ordered subpoenas.

In any event, Respondents will not be prejudiced by this Court's granting Petitioner's 1782 Application *ex parte* as they will have an opportunity to challenge the discovery Petitioner seeks once they are served.  As noted by Judge Kaplan,

> Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex parte*. Where, as here, the application is for the issuance of subpoenas, no substantial rights of the subpoenaed person are implicated by such action, as the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.

Order, *In re Chevron Corp.*, No. 10-mc-00002 (LAK) (S.D.N.Y. Aug. 6, 2010), ECF No. 2.[65]

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the *Ex Parte* Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit A, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas on Respondents; and (d) grant any and all other relief to Petitioner as deemed just and proper.

---

[65]  *See In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15-MC-417 (LAK), 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted *ex parte*, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas."); *In re Gushlak*, No. 11-MC-218 NGG, 2012 WL 1514824, at *3 n.4 (E.D.N.Y. Apr. 30, 2012) (citing several cases, including from this district, and noting that "courts routinely grant § 1782 applications *ex parte*, limiting respondents' challenges to after the subpoena is served").

Dated:  February 13, 2026                     Respectfully submitted,

                                              /s/ *Lucas V.M. Bento*
                                              _____

                                              Lucas V.M. Bento
                                              QUINN EMANUEL URQUHART &
                                              SULLIVAN LLP
                                              295 Fifth Avenue, 9th Floor
                                              New York, NY 10016
                                              Phone: 212-849-7000
                                              lucasbento@quinnemanuel.com

                                              Gavin S. Frisch (*pro hac vice* application
                                              forthcoming)
                                              QUINN EMANUEL URQUHART &
                                              SULLIVAN LLP
                                              111 Huntington Avenue, Suite 520
                                              Boston, MA 02199
                                              Phone: (617) 712-7100
                                              gavinfrisch@quinnemanuel.com

                                              *Attorneys for Petitioner Nicholas Lamotte*